AO 91 (Rev. 10/95) Criminal Complaint

# UNITED STATES DISTRICT COURT

## EASTERN   DISTRICT OF   CALIFORNIA



FILED

SEP 0 6 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

**UNITED STATES OF AMERICA**

v.

**NICHOLAS ROBERT BOWEN**

**5288 Pioneer Ct., Grizzly Flat, California  95899**

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER:

**2:13 - MJ - 0 2 7 8    EFB**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  In Sacramento County, in the Eastern District of California defendant did,

- **between a date unknown, but no later than on or about January 1, 2013, and on or about July 10, 2013, did knowingly receive and distribute visual depictions using a means and facility of interstate and foreign commerce, and that had been transported in and affecting interstate and foreign commerce, and which contained materials which had been so transported, by any means, including by computer, where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of such conduct as defined in Title 18, United States Code, Section 2256(2);**

- **on or about July 10, 2013, did knowingly possess and knowingly access with intent to view, matter which contained visual depictions that had been transported using a means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which was produced using materials which had been so transported, by any means, including by computer, where the production of such visual depictions involved the use of a minor engaged in sexually explicit conduct and such visual depictions were of such conduct, as defined in Title 18, United States Code, Section 2256(2), all in violation of Title 18, United States Code, Section 2252(a)(4)(B);**

in violation of **Title 18, United States Code, Sections 2252(a)(2) and (a)(4)(B)**.  I further state that I am a Special Deputy United States Marshal, assigned to the Sacramento Internet Crimes Against Children Task Froce, and that this complaint is based on the following facts:

- **See Attached Affidavit**

**X**  Continued on the attached sheet and made a part hereof.

Signature of Complainant JAMES WILLIAMS
Special Deputy U.S. Marshal
Sacramento ICAC Task Force

Sworn to before me, and subscribed in my presence

September 5, 2013                                                     at      Sacramento, California

Date                                                                                      City and State

EDMUND F. BRENNAN

United States Magistrate Judge

Name and Title of Judicial Officer                                           Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

I, James Williams, being duly sworn, depose and state:

1. I am a Detective with the Sacramento County Sheriff's Department (SSD), presently assigned to the Sacramento Internet Crimes Against Children (ICAC) Task Force. I have been assigned to the Sacramento ICAC Task Force since August 2001. I have been employed by the SSD since April 1991. In August 2006, I was cross designated as a Special Deputy United States Marshal. As part of my daily duties as a Detective, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251 and 2252. I have received training in the area of child pornography and child exploitation and as part of my duties have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have attended numerous courses in the investigation of child sexual exploitation, child pornography, and online child sexual exploitation.  In the course of my duties I have been the investigating officer and Affiant of over 100 applications for search warrants relating to numerous child pornography investigations.

2. I also have provided instruction to both law enforcement and civilians in the area of Internet security, online child exploitation, as well as social networking sites, such as MySpace and Facebook. I have received extensive training in the areas of computers and computer forensics, and I am considered a subject matter expert in high technology crimes and child exploitation. I have certifications from the Robert Presley Institute of

13-
305C-SC

Criminal Investigation in the investigation of High Technology Crimes. As a subject matter expert, I have assisted with the development of California Peace Officer Standards and Training (POST) telecourses for these subjects. I have also written and distributed, nationwide, several papers in regards to investigations of Peer to Peer file sharing investigations.

3. This Affidavit is made in support of an application for a warrant to arrest Nicholas Robert Bowen, date of birth October 8, 1951, residing at 5288 Pioneer Ct., Grizzly Flat, California  95899.

4. I believe that there is probable cause to believe that Bowen has violated 18 U.S.C. § 2252 (a)(2), which makes it a crime to knowingly receive or distribute any visual depiction using any means or facility of interstate or foreign commerce, or that has been mailed, or shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed, shipped or transported in interstate or foreign commerce, by any means including by computer,  where the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct; and 18 U.S.C. § 2252 (a) (4) (B), which makes it a crime to knowingly possess matter containing any visual depiction that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and such visual depiction was of such conduct.

13-
305C-SC

2

5. I am familiar with the information contained in this Affidavit based upon my experience and training, my conversations with other law enforcement officers who have engaged in numerous investigations involving child pornography, and the investigation I have conducted.

6. Because this Affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have not excluded any significant exculpatory evidence. I have set forth only those facts that I believe are necessary to establish probable cause to believe that the Bowen has violated 18 U.S.C. § 2252(a)(2) and (a)(4)(B). Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## Definitions

7. "Child Pornography" includes the definition found at 18 U.S.C. § 2256(8), and is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

8. As used in this affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non-sexually explicit photographs (such as minors depicted in undergarments in department

store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

9. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. <u>See</u> 18 U.S.C. § 2256(5).

10. "Minor" means any person under the age of eighteen years. <u>See</u> 18 U.S.C. § 2256(1).

11. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. <u>See</u> 18 U.S.C. § 2256(2).

## The Internet and Definitions of Technical Terms Pertaining to Computers

12. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and

---

[1] The term "computer" is defined by 18 U.S.C. § 1030 (e) (1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."

international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet (through a university, an employer, or a commercial service such as an "Internet Service Provider" or "ISP" [see definition of "Internet Service Provider" below]). Once the individual has accessed the Internet, that individual can use Internet mail services, including sending and receiving e-mail. In addition, the individual can visit web sites (see definition of "web sites" below), and make purchases on the web sites.

## Computers and Child Pornography

13. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would

follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/subscription-based web sites to conduct business, allowing them to remain relatively anonymous.

14. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, the development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication and distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

   a. Production: Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

13-
305C-SC

b. <u>Communication and Distribution</u>: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache[2] to look for "footprints" of the web sites and images accessed by the recipient.

c. <u>Storage</u>: The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 80 gigabytes are not uncommon. These drives can store thousands of images at very

---

[2] "Cache" refers to text, image and graphic files sent to and temporarily stored by a user's computer from a web site accessed by the user in order to allow the user speedier access to and interaction with that web site.
13-
305C-SC

high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

## Probable Cause to Arrest Nicholas Robert Bowen:

15. I reviewed the Davis (California) Police Department report related to the arrest of Nicholas Robert Bowen and Wenyi Xu on July 10, 2013. This report detailed that Xu was arrested for opening her dress and exposing herself to juvenile boys in Davis, California (Yolo County). When questioned at the scene, Xu initially denied exposing herself, saying instead that someone had seen her adjusting her dress and mistaken it for something more. When confronted with inconsistencies in her story, Xu admitted that she and Bowen were in Davis with the intent of showing her naked breasts and vagina to 10-12 year old boys that they might find in the community. Bowen was present filming these encounters with the purpose of videotaping these encounters.

16. After being taken to the Davis Police Station, Xu was read her *Miranda* rights. She waived her rights and agreed to give a statement to Davis Police. In this *Mirandized* statement, Xu said the following:

   a. She met Bowen about a year prior while taking the light rail from Folsom to her job in Sacramento, California. Approximately two to three months after first speaking with Bowen, she began a sexual relationship with him. After their first sexual encounter, Xu said that Bowen told her that he was sexually aroused by sexually

13-
305C-SC

8

explicit images of 10-12 year olds. Xu said that she continued to
meet Bowen at his house Bowen once a month or once every other
month to have sex. On occasion, Bowen would show her sexually
explicit images of 10-12 year old boys that he had saved on his
computer.

b. Xu said that she would communicate with Bowen at night using
Yahoo Messenger and Skype. Xu stated that her Yahoo Messenger
screen name was jenniferxu1983@yahoo.com and her Skype screen
name was Wenyixu1983. Bowen's Yahoo Messenger name was
nicholasbowen@yahoo.com and his Skype name was
nicholasrbowen. When Xu and Bowen were communicating at
night, Bowen would point his computer's webcam towards his penis
and masturbate. Bowen and Xu would communicate using Yahoo
Messenger and Bowen would "share" pictures of 10-12 year old boys
naked with erect penises. Xu stated that she did not save the
images to her computer that they were merely shared. Xu also
stated that she deleted the conversations when they were done so
that there was no record of them. Other media through which Xu
and Bowen communicated were email and text messages.

c. Three or four months ago, Xu and Bowen met at the Folsom light
rail station. They drove to an elementary school in the area where
Xu attempted to expose herself to boys in the area. While this was
happening, Bowen was videotaping the encounters. When Xu
asked why he was videotaping her exposing herself to boys, Bowen
replied that it was in order for him to get "excited later."

d. Xu then went on to describe the trip to Davis with Bowen. She said
that she met Bowen at the light rail station in Folsom for an
"outing." In the car, Bowen gave her a pair of glasses with a
camera built into them; Bowen also had a pair for himself. After
initially driving to the Davis High School parking lot (where

swimming lessons were taking place). After leaving the high
school, Xu and Bowen went to another park where she attempted to
expose herself to a white male boy between the ages of 10 and 12,
who was riding his bicycle. Bowen videotaped this attempt with his
cell phone. She exposed herself to approximately four or five boys
between the ages of 10-12. These instances were videotaped by
Bowen. After the last exposure, she was arrested by the Davis
Police.

17. Based upon my training and experience, I know that Yahoo Instant
Messenger has the ability to Photo Share, which will allow a user to share
pictures using Yahoo Messenger. Using Photo Share opens a window to
the side of the messenger window, which then allows for the images to be
displayed. I also know that depending on the settings a user has for their
Yahoo Messenger account, the conversations may be stored within the
Yahoo Email Account associated with the Messenger service.

18. Bowen was also questioned at the time of his arrest. During this initial
questioning, Bowen said that he and Xu were in the area because they
thought there was another path back to the park that they had previously
been in. He said that they were in the park in order to have a picnic. He
said that Xu was married, and that he had been dating her for about a
year. Bowen agreed to let Davis Police see his phone, but refused to
provide the pass code to unlock it. He also gave them the glasses that he
was wearing at the time of his arrest; these glasses contained a built in
video camera.

19. I spoke with Investigator Dorothy Pearson, an Investigator with the Yolo
County District Attorney's Office. Investigator Pearson told me that both
Xu and Bowen's cell phones were seized at the time of their arrests. Xu

13-
305C-SC

had an Apple iPhone 5 and Bowen had a Samsung Galaxy s3.  A forensic examination of these items was being done pursuant to a search warrant issued by a Yolo County judge.  In addition, a search warrant had been obtained for computer equipment in Bowen's residence in Grizzly Flat, California.  Investigator Pearson was conducting the forensic analysis of all seized computer evidence.

20. Investigator Pearson told me the following information about her forensic analysis of the seized digital media:

<u>Analysis of Bowen's Computer and Cell Phone</u>

a. Images of minor engaged in sexually explicit conduct had been found on an external hard drive seized from Bowen's residence. Some of the same images from this hard drive were found on Bowen's cell phone in a folder called "boys".  Some of these images were of a prepubescent boy who appeared to be having sexual intercourse with an adult female, a prepubescent boy whose mouth was on an adult female's breast, and an adult who appeared to be orally copulating a prepubescent boy's penis.

b. An image of a prepubescent boy wearing an orange shirt with an erect penis was found on both Bowen's and Xu's phone.

c. Bowen had sent an image called "yes mom" via MMS (multimedia messaging service, commonly referred to as Picture Text) to Xu's cell phone.  This image was of an adult female who appeared to be orally copulating a male child.

d. Located on Bowen's cell phone was an image of a prepubescent girl that investigators believe to be Xu's minor child (hereinafter "JV1"). The child is toddler-aged.  The image is focused on the child's vaginal area. The child was laying on her back with her legs spread and did not have a diaper on.  This image was in a Multimedia

Message (MMS) dated June 22, 2013, and was sent from Xu's phone to Bowen's phone number.

e.  The same image of JV1 was also found on Bowen's cell phone in a folder named "\mnt\sdcard\Wenyi". Based upon my training and experience, I know that the above described path is consistent with a folder titled "Wenyi" that is saved on an SD Card located inside the phone. Within the path "\mnt\sdcard\Wenyi" were other photos of Xu naked, images of Xu's child naked, and images of Xu with her child clothed. There were also images of Xu half naked sitting on play equipment in parks.

f.  The images of Xu's child had metadata associated with them about the make and model of the camera that took the photo, as well as the GPS location of where the photo was taken. The make and model for the camera that took the photos was an Apple iPhone5 and the GPS information resolved to either 122 or 120 Kennar Way, Folsom, CA. Xu's address was 122 Kennar Way, Folsom, CA.

g.  There was a video that was found on Bowen's phone within the path "\mnt\sdcard\Wenyi" that showed Xu's child without a diaper on. The camera moves around but appears to be directed towards the vaginal area.

Analysis of Xu's Cell Phone

h.  On Xu's phone was an image that contained several different elements. In one part of the image was Xu laying on a bed with her legs spread. Also on the image, to the right of the image of Xu, was another image superimposed on top of the image of Xu that showed JV1 laying on her back with her legs spread and her vaginal area exposed. This composite image was found in a folder named SMS attachments, which would indicate that it had been sent via text message. This image was not located on Bowen's phone, but

Investigator Pearson had not completed her examination of his
phone.

21. The undersigned Affiant submits that there is probable cause to believe
that the Bowen has received, and distributed child pornography, and
possessed child pornography. This opinion is based upon the fact that
located on Bowen and Xu's phone are sexually explicit images that appear
to have been taken by Xu at her residence, and sent to Bowen through
online communications. This opinion is also based upon the statement of
Xu that she received images of child pornography from Bowen, and the
forensic evidence showing at least one common image that appeared on
both Bowen and Xu's cell phones, and the recovered MMS message
showing a second image being sent from Bowen to Xu. Finally, this
opinion is based upon the fact that images of child pornography were
located on both Bowen's computer and cell phone.

22. The undersigned Affiant submits that there is probable cause to believe
that the SUBJECT has produced and attempted to produce child
pornography. This opinion is based upon the fact that images that appear
to have been taken by the defendant were located on the defendant's
phone as well as appear to have been taken at the SUBJECT PREMISES.
This opinion is also based upon the fact that the phone found in the
defendant's possession has been identified pursuant to this investigation
as an instrumentality in the distribution of child pornography, that the
phone contains images of minors engaged in sexually explicit conduct, and
your Affiant's knowledge and investigative experience related to the
habits and tendencies of child pornography distributors. Your Affiant also
bases this opinion on his investigative experience gained during the
execution of previous search warrants related to individuals identified as

13-
305C-SC

13

distributors, possessors and producers of child pornography in unrelated investigations.

## Conclusion

23. Based upon the above information, there is probable cause to believe that the Nicholas Robert Bowen has violated 18 U.S.C. § 2252(a)(2), which makes it a crime to receive or distribute any visual depiction of child pornography, and 18 U.S.C. § 2252(a)(4)(B), which, among other things, make it a federal crime for any person to knowingly possess visual depictions of minors engaged in sexually explicit conduct.

24. Based upon the foregoing, this Affiant respectfully requests that this Court issue an arrest warrant for Nicholas Robert Bowen.

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

13-
305C-SC

25. Nicholas Robert Bowen is currently not in United States custody.

Accordingly, in order to avoid alerting him of this investigation and to prevent his possible flight and the potential destruction of any evidence that he may still be in possession of, the United States requests that the Court order this arrest warrant and criminal complaint be kept under seal until further order of the Court.  Without such an order, individuals may flee, or may conceal, damage, or destroy evidence prior to the warrant's execution.

JAMES WILLIAMS
Special Deputy U.S. Marshal
Sacramento ICAC Task Force

Approved as to form.

KYLE REARDON
Assistant United States Attorney

Subscribed and sworn to before me this
5th day of August 2013
September

EDMUND F. BRENNAN
United States Magistrate Judge
Eastern District of California
Sacramento, California

13-
305C-SC

15